**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE FOUNDRY RESINS** | **Case No.** | **2:04-md-1638** |
| **ANTITRUST LITIGATION** | **Master Docket No.** | **2:04-cv-415** |
| | **JUDGE GREGORY L. FROST** | |
| | **Magistrate Judge Mark R. Abel** | |

**This document relates to: ALL CASES.**

**ORDER**

This matter is before the Court for consideration of a motion to dismiss (Doc. # 93) filed by Defendant Hüttenes-Albertus Chemische Werke GmbH, a memorandum in opposition (Doc. # 131) filed by Plaintiffs, and a reply memorandum (Doc. # 136) filed by Hüttenes-Albertus Chemische Werke GmbH. For the reasons that follow, this Court finds the motion to dismiss not well taken.

**I. Background**

This multi-district litigation involves a purported antitrust conspiracy in which Defendant Hüttenes-Albertus Chemische Werke GmbH ("HA") allegedly conspired with various domestic companies to fix prices and competition in the foundry industry. The filings present a detailed and often complicated series of events that need not be set forth in great detail here. Of import to the instant motion to dismiss, however, is the contention that within a few years after entering the United States foundry resins market by forming Delta-HA, HA met with its chief domestic competitors, Defendants Borden Chemical, Incorporated and Ashland Incorporated, in various countries. These meetings allegedly culminated in a merger or joint venture between HA and Borden creating HA International LLC ("HAI"), thereby eliminating their competing against one

1

another; an agreement to allocate the American and European markets among the specific companies; and an agreement to fix the prices of foundry resins.  The purported end results of these agreements were that the defendant companies did not compete against one another, even going so far as to issue non-competitive bids containing inflated quotes, to avoid obtaining the other's customers, and that they joined in issuing consistent price announcements.

HA has moved for dismissal on the grounds that there is a want of personal jurisdiction. (Doc. # 43.)  After a period of limited discovery on the jurisdictional issue, the parties have completed briefing on that motion, which is now ripe for decision.  Although HA has requested oral argument, the Court in its discretion **DENIES** said request.  Pursuant to S.D. Ohio Civ. R. 7.1(a), motions are decided "without oral hearings, unless specifically ordered by the Court." HA has failed to explain sufficiently the grounds for requesting oral argument as S.D. Ohio Civ. R. 7.1(b)(2) requires.  Additionally, the Court's review of the motion indicates that oral argument will not be helpful in resolving the issues before the Court.

## II.  Discussion

As the Sixth Circuit has explained, there are two types of personal jurisdiction:

> The Supreme Court distinguishes between "general" jurisdiction and "specific" jurisdiction, either one of which is an adequate basis for personal jurisdiction.  *See, e.g., Burger King,* 471 U.S. at 472, 473 n. 15, 105 S.Ct. 2174 (1985); *see also Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992) (noting that a distinction between general and specific jurisdiction exists for the purpose of due process analysis).  A federal court has general jurisdiction when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state.  *See, e.g., Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 448, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Bird,* 289 F.3d at 872 (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)).  Specific jurisdiction exists when "a State exercises personal

2

> jurisdiction over a defendant in a suit arising out of or related to the defendant's
> contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,*
> 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

*Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003). Under either form of jurisdiction, a

plaintiff has the burden of showing personal jurisdiction when there is a motion to dismiss for a

lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *Int'l Tech. Consultants, Inc. v.*

*Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). "In diversity cases, the federal court applies

the law of the forum state in which it sits to determine if personal jurisdiction is appropriate."

*Rabiroads v. DFK Leasing Co., Inc.,* 68 F. Supp. 2d 850, 852 (N.D. Ohio 1999). When there is a

motion to dismiss for lack of personal jurisdiction and no hearing is conducted, "the court must

consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a

motion, the plaintiff need only make a *prima facie* showing of jurisdiction." *Rothschild Berry*

*Farm v. Serendipity Group, LLC,* 84 F. Supp. 2d 904, 905 (S.D. Ohio 1999) (punctuation

omitted) (citation omitted). This burden is considered "relatively slight." *Nationwide Mutual*

*Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *American Greetings Corp.*

*v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988)).

A court may exercise personal jurisdiction if the state's long-arm statute reaches the

defendants and the exercise of jurisdiction comports with federal due process. *Nationwide*

*Mutual Ins. Co.*, 91 F.3d at 793. In some states, the long-arm statute reaches as far as due

process permits. *Rabiroads*, 68 F. Supp. 2d at 852. In other states, however, the long-arm

statutes are not co-extensive with due process and determining the existence of personal

jurisdiction therefore requires analysis under both the state's long-arm statute and federal due

process. *See, e.g., Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638 N.E.2d 541, 543,

(1994) (discussing Ohio's long-arm statute); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (same).

### A. Specific Jurisdiction

HA contends that there is a lack of specific jurisdiction in this litigation.  At the outset, the Court recognizes, as Plaintiffs correctly argue, that the relevant states' long-arm statutes support the exercise of jurisdiction here.  The statutory analysis relevant to three of the four states involved here is subsumed in the due process analysis set forth below, because "[w]hen a state has a long arm statute that extends to the limits of due process, a district court is able to collapse its long arm analysis into its due process analysis." *Matrix Essentials, Inc. v. Harmon Stores, Inc.*, 205 F. Supp. 2d 779, 783 (N.D. Ohio 2001).  The long-arm statute of the fourth state, Ohio, is not co-extensive with due process and thus requires analysis under both the state's long-arm statute and federal due process.  *Goldstein*, 70 Ohio St. 3d at 235, 638 N.E.2d at 543. The end result here is the same, however, because personal jurisdiction under the long-arm statute is appropriate where, as here, the language of that statute confers jurisdiction and exercising jurisdiction does not violate due process.  *Id.* at 235, 638 N.E.2d at 543.  By allegedly causing tortious injury to Ohio purchasers, HA has acted in a manner that falls within Ohio's statute.  *See, e.g.*, Ohio Rev. Code § 2307.382(A)(6), (7).  It must be noted that, no doubt to HA's chagrin, this Court's application of the state statutes is based in part on favorably-viewed inferences that may be ultimately found erroneous by the factfinder.

This leads into the issue of due process concerns.  The Sixth Circuit has explained that "a familiar three-part test for determining whether specific jurisdiction exists over a nonresident defendant" exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Mahler v. Startari*, 142 Fed. Appx. 839, 841 (6th Cir. 2005) (citing *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).  *See also Cadle Co. v. Schlichtmann,* 123 Fed. Appx. 675, 677 (6th Cir. 2005).  That appellate court has emphasized that the "central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.' "  *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000) (citations omitted).

In regard to the first prong of the inquiry, the purposeful availment requirement, the Court recognizes that "[a] defendant has 'purposefully availed' himself of a forum by engaging in activity that should provide 'fair warning' that he may have to defend a lawsuit there."  *Youn*, 324 F.3d at 418 (citing *World-Wide Volkswagen,* 444 U.S. at 297).  The Sixth Circuit has explained that the concept " 'is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities.' "  *Bridgeport Music, Inc. v. Still N Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002)).  Thus, a plaintiff must show that there is more than a mere collateral relation to the forum in order to satisfy this prong.  The necessary connection can take the form of either direct action in the forum or conduct occurring outside the forum, so long as the

defendant can reasonably anticipate being called into court in that forum.  *Id.* (quoting *Jones v. Petty-Ray Geophysical Geosurce, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992)).  Accordingly, "[i]f a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant.  *Bridgeport Music, Inc.*, 327 F.3d at 479 (citing *Burger King,* 471 U.S. at 476).

Construed in a light most favorable to Plaintiffs, the evidence supports the contention that HA " 'purposefully established minimum contacts within the forum.' " *Calphalon Corp.*, 228 F.3d at 722 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).  Notably, courts have recognized that "[a] single act may meet the purposeful availment requirement."  *Youn*, 324 F.3d at 419 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).  *See also Nationwide Mut. Ins. Co.*, 91 F.3d at 794 ("In contrast with general jurisdiction, specific jurisdiction often may be premised on a single act of the defendant. The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case"; citations omitted). Thus, the quality if not the overall quantity of the contacts described in Plaintiffs' supporting materials indicates that HA engaged in strategic maneuvering and negotiations designed to effectuate specific future consequences in the forums involved.  Plaintiffs have presented this Court with specific evidence that, necessarily regarded in Plaintiffs' favor, support Plaintiff's contentions.  For example, Plaintiffs have submitted an affidavit by Gary Strehl that purports to set forth admissions made by HA director Klaus Pampel that support Plaintiffs' factual contentions.  (Doc. # 137, Ex. 3.) Other evidence, such as an Illinois meeting itinerary, support by inference the affidavit allegations that Pampel attended a series of meetings in which it is alleged that he essentially lectured attendees on the workings of

6

the claimed conspiracy.  (Doc. # 137, Ex. 7.)  Finally, although there is factual question as to the

degree of control that existed, it is notable that WE there is additional evidence indicating that

HA actively exercised significant control over its subsidiary's dealings.  *Cf. MacDonald v.*

*Navistar Int'l. Transp. Corp.*, 143 F. Supp. 2d 918, 923-24 (S.D. Ohio 2001) (citing *Velandra v.*

*Regie Nationale des Usines Renault,* 336 F.2d 292, 296 (6th Cir.1964)) ("It is well-established

that a parent company may be subject to personal jurisdiction in a state where its subsidiary is

doing business, provided that the corporate separation is fictitious, the parent has held the

subsidiary out as its agent, or the parent has exercised undue control over the subsidiary.").

HA's Pampel even reviewed specific bids between the conspiratorial companies, resulting in at

least one voided HAI contract that undercut Ashland. (Doc. # 137, Ex. 11.)  Such acts indicate

that HA apparently sought to exploit substantially and on a continuous basis the market for its

products, which included the specific markets existing in the relevant states, including Ohio.

This intersection with the jurisdictions involved cannot be regarded as random or attenuated.

  Moreover, Plaintiffs' account of events supports purposeful availment and the exercise of

jurisdiction under the "effects test."  The Sixth Circuit has explained that "[u]nder the effects test

... personal jurisdiction exists where an individual purposefully directs activities towards the

forum state with the intent to cause harm there."  *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109,

113 (6th Cir. 2005) (citing *Calder v. Jones,* 465 U.S. 783 (1984)).  The conspiracy alleged here

targeted the United States foundry industry generally and the markets in Ohio, Illinois,

Pennsylvania, and Wisconsin specifically.  Thus, because HA's intentional, tortious actions were

aimed at these markets and the brunt of the harm would be felt in these states–all comprising

focal points of the damage inflicted–HA could reasonably anticipate being haled into court in *at*

*least* these forum states, if not elsewhere in the country.  Plaintiffs have thus "demonstrated facts sufficient to support a finding that both [HA] purposefully directed activities at a resident of [these states] that caused consequences in the forum state[s] and that [HA] therefore should have reasonably foreseen that [it] could be haled into [a court in each state] as a result." *Id.* at 115.

HA, of course, disagrees with Plaintiffs' factual evidence.  The company points to factual issues introduced for the purpose of defeating Plaintiffs' jurisdictional arguments.  In doing so, however, HA overlooks that, absent a hearing, this Court must accept the factual allegations of Plaintiffs' pleadings as true and construe all their supplemental evidentiary material in a light most favorable to Plaintiffs.  Although several of Plaintiffs' points are based on inference (e.g., the purported secret meeting in Columbus, Ohio), they are nonetheless reasonable inferences that prevail here even if subject to subsequent certain attack.  Viewed in this manner, Plaintiffs' contentions support the exercise of jurisdiction here.  Nor does HA direct this Court to controlling authority standing for the proposition that the Department of Labor investigation irrefutably proves dispositive here.

The second requirement, the "arising from" prong of the mandated inquiry, is concerned with whether the operative facts of the controversy arise from a defendant's contacts with the forum.  *Calphalon Corp.*, 228 F.3d at 723 (citing *Southern Machine Co.*, 401 F.2d at 384)).  If the operative facts are not related to the defendant's contact with the forum, then the cause of action asserted obviously does not arise from the contact under scrutiny.  *Id.*  The question is thus  whether the cause of action is " 'related to' or 'connected with' " a defendant's contacts with a forum.  *Youn*, 324 F.3d at 419 (quoting *Third Nat'l Bank*, 882 F.2d at 1091 n.2).  In considering this prong, the Court is cognizant that a lenient standard applies.  *Scotts Co.,* 145

Fed. Appx. at 115 (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

Here, unlike in the *Calphalon* case, the facts forming the basis of Plaintiffs' allegations *actually did* occur in part in the forum states.  As noted above, there is at least some evidence, both express and implied, that HA engaged in directing improper bids and in holding strategic meetings in the forum states involved.  These acts form the operative facts at the core of the conspiracy allegation.  The alleged tortious conduct and its consequences are made possible only by the conspiracy members' transaction of business with Plaintiffs.

To be clear, the foregoing analysis involves HA's role and should not be regarded as imputing to HA the forum contacts of its co-conspirators.  *See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 808 (N.D. Ohio 1998) ("federal courts in Ohio have not adopted the conspiracy theory which would impute a co-conspirator's jurisdictional contacts with the forum to the foreign defendant seeking dismissal").  *See also Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794, 802 n.7 (N.D. Ohio 1998).  Rather, the Court is concerned with the apparent actions of HA specifically within and involving the relevant forums.

The third and final prong of the necessary inquiry asks whether there is a substantial connection between the consequences of a defendant's actions and the forum state(s) so as to make the exercise of jurisdiction reasonable.  *Calphalon Corp.*, 228 F.3d at 724.  When the first two prongs have been met, a presumption arises that the exercise of jurisdiction would be reasonable.  *Scotts Co.,* 145 Fed. Appx. at 115 (citing *Third Nat'l Bank*, 882 F.2d at 1092.)  Thus, "where the first two criteria are satisfied, 'only the unusual case will not meet this third criterion.' "  *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1461 (6th Cir. 1991)).

It is beyond question that, if true, the consequences of HA's purported wrongdoing are substantially connected to the forum states involved here, because the alleged conspiracy purportedly targeted and affected direct purchasers in Ohio, Illinois, Pennsylvania, and Wisconsin. The Court thus finds that it is equally beyond dispute that the states involved here have an interest in resolving a suit brought by one of their residents against a foreign defendant that purposefully availed itself of acting in and causing consequences in that state. *Id.* The states' substantial interests and the interests of the Plaintiffs in obtaining relief outweigh the notable but necessary burden on HA (a burden the company no doubt anticipated when it formed partnerships, such as HAI, to operate within this country).

In reaching this latter conclusion, the Court is cognizant that "[s]pecial concerns arise when a plaintiff attempts to bring a foreign defendant within our national borders." *Nationwide Mut. Ins. Co.*, 91 F.3d at 797. But this is not a case in which the foreign defendant is of little additional value to the case. *See City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 665-68 (6th Cir. 2005) (affirming district court's decision that the substantial burden imposed by exercising personal jurisdiction over a Japanese defendant would add little or nothing to the potential recovery). Rather, this is a case in which the foreign defendant is potentially and apparently a substantial and, as a primary participant via at least Pampel, is in fact a necessary party.

The exercise of jurisdiction here does not offend traditional notions of fair play and substantial justice. To the contrary, in light of Plaintiffs' assertions and supporting material, it is reasonable to conclude that HA could reasonably expect to be haled into a court in the involved states to defend its actions–states in which HA either acted directly or in which the company and

10

its co-conspirators intentionally caused consequences.

The Court concludes that, despite being a foreign entity, HA is properly subject to the exercise of personal jurisdiction in this litigation.

### B.  General Jurisdiction and Other Theories of Jurisdiction

Having concluded that specific jurisdiction exists in this litigation, the Court need not and does not present an extended discussion of the parties' arguments as to whether general jurisdiction exists.  Similarly, the Court declines to opine unnecessarily on Plaintiffs' alternative theories of jurisdiction.

### IV.  Conclusion

For the foregoing reasons, the Court concludes that Plaintiffs have demonstrated a *prima facie* case of personal jurisdiction.  Accordingly, the Court **DENIES** the motion to dismiss. (Doc. # 93.)  HA remains free, however, to proceed to trial without waiving the defense of lack of personal jurisdiction.  *See Imwalle v. Reliance Medical Products, Inc.*, No. C-1-04-275, 2005 WL 2277426, at *6 (S.D. Ohio Sept. 19, 2005) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  The parties should be prepared to confer with the Court regarding the setting of a case schedule at the December 13, 2005 status conference.

**IT IS SO ORDERED.**

  /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

11